# Law Office of William F. Horn
### 188-01B 71st Crescent
### Fresh Meadows, New York 11365
### Telephone: 718.785.0543
### Facsimile: 866.596.9003
### bill@wfhlegal.com

March 7, 2011

Hon. Frederic Block, U.S.D.J.
UNITED STATES DISTRICT COURT
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> **RE:   *Avrohom Sebrow v. Specialized Loan Servicing, LLC***
> E.D.N.Y. Case No. 1:10-cv-02822-FB-RML

Dear Senior Judge Block,

I am co-counsel for the Plaintiff. This letter is written pursuant to Your Honor's Individual Motion Practice Rule 2-A. For the reasons set forth below, Plaintiff requests the Court's guidance on how Plaintiff should proceed with respect to opposing Defendant Specialized Loan Servicing's ("SLS") recently served Fed. R. Civ. 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint [Doc. 12], a copy of which is attached hereto.[1] Specifically, Defendant has included extrinsic evidence in support of its Motion to Dismiss and asks the Court to take judicial notice of that evidence as it is "integral to the allegations in the complaint or documents referenced in the complaint."

In light of the foregoing, as discussed *infra*, Plaintiff respectfully requests that the Court: <u>stay</u> Defendant's pending Motion to Dismiss until the Court has provided notice to the Parties as to whether the Court intends to convert Defendant's current motion into a Fed. R. Civ. 56 Motion for Summary Judgment. *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d 2008). If the Court converts the motion, Plaintiff requests that Your Honor permit Plaintiff leave pursuant to Fed. R. Civ. P. 56(d)(2) to conduct discovery and submit additional evidence and briefing pertinent to such a motion. Should the Court decline to convert the motion, Plaintiff requests that the Court issue an order striking Defendant's offensive extrinsic material and order Plaintiff to ignore same in his opposition to Defendant's Motion to Dismiss.

### *Relevant Background*

Following a conference with the Court, the Parties discussed and agreed to a briefing schedule whereby, Plaintiff would file a First Amended Class Action Complaint on or before 2/4/2011,

---

[1] Defendant failed to follow Your Honor's Individual Motion Practice Rule 2-D, which required Defendant to serve a cover letter setting forth, *inter alia*, the papers being served and file a copy of that letter via ECF. Defendant further neglected to include a table of contents as required by Your Honor's Individual Motion Practice Rule 2-C.

Hon. Frederic Block, U.S.D.J.
*Sebrow v. Specialized Loan Servicing, LLC*
March 7, 2011
Page 2

Defendant would serve Plaintiff with its desired Fed. R. Civ. P. 12(b)(6) Motion to Dismiss by 2/25/2011, Plaintiff would serve his opposition to Defendant's motion by 3/18/2011, and Defendant's reply brief would will serve its reply and file the briefs with the Court on 4/1/2011. [Doc. 11]. In accordance with the foregoing schedule, Plaintiff filed his First Amended Complaint on 2/4/2011 [Doc. 12], and Defendant served its Motion to Dismiss on 2/25/2011 [See, attached]. Importantly, not once in its multiple filings and conferences with the Court did Defendant *ever* notify the Plaintiff or Court of its intent or desire to use extrinsic evidence in support of its "Motion to Dismiss."

Since January 2011, Defendant has requested that the Parties engage in mediation in an effort to quickly resolve this case in an efficient and cost-effective manner; Plaintiff agreed, and the Parties are currently exchanging their respective dates of availability, proposed mediator(s), and settlement positions. Notwithstanding the Parties' intent to pursue mediation, they remain obligated to abide by their briefing/scheduling order. [Doc. 11]. Accordingly, on 2/4/2011, Plaintiff filed his First Amended Complaint [Doc. 12], and, on 2/25/2011, Defendant served its Motion to Dismiss Plaintiff's First Amended Complaint. [See, attached].

In support of it Motion for Summary Judgment, however, Defendant has offered, and asks the Court to consider, extrinsic evidence. Defendant's extrinsic evidence is neither authenticated nor supported by affidavit. Yet, Defendant states that the Court should take "judicial notice" of the documents because they are "integral to the allegations in the complaint or documents referenced in the complaint" and cites *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006), in support of its request. [Defendant's Memo, Pg. 5 at ¶3, fn2, Exhibit 1; Pg. 6 at ¶1, Exhibit 2]. Defendant then argues this inadmissible extrinsic evidence throughout its brief.

### *Legal Analysis*

If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a…motion [to dismiss], and thus complete discretion in determining whether to convert the motion to one for summary judgment." *Carione v. United States*, 368 F.Supp.2d 186, 191 (E.D.N.Y. 2005) (internal quotation marks and citations omitted); see also, *Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2d 2006). ("A court may indeed convert a motion for judgment on the pleadings into a motion for summary judgment."). The court must, however, provide notice that the motion is to be converted and permit the parties to submit additional evidence and briefing pertinent to such a motion. *Sahu v. Union Carbide Corp.*, 548 F.3d at 67 (2d 2008).

Defendant cites *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006), in support of its contention that inclusion of extrinsic evidence is permissible on a Motion to Dismiss. The Defendant is half-right. Curiously, though, Defendant omits the following crucial language from *Faulkner*:

"[i]f, on a motion [for dismissal under Rule 12(b)(6)], matters outside the pleading are presented to and not excluded by the court, the motion shall be

Hon. Frederic Block, U.S.D.J.
*Sebrow v. Specialized Loan Servicing, LLC*
March 7, 2011
Page 3

> treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. Fed. R. Civ. P. 12(b)."

*Faulkner v. Beer,* 463 F.3d at 134. Defendant also omitted the following language from the *Faulkner* decision, presumably because it does not support its position:

> …before materials outside the record may become the basis for a dismissal, several conditions must be met. For example, even if a document is "integral" to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document….It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document. The present record does not satisfy these conditions.

*Id.* at 135. (internal citations omitted). Like *Faulkner,* the Defendant here has not made it clear on the record that: (1) no dispute exists regarding the authenticity or accuracy of its documents; and (2) there exist no material disputed issues of fact regarding the relevance of the documents. Thus, the Court should either convert Defendant's Motion to Dismiss into a Fed. R. Civ. P. 56 Motion for Summary Judgment and permit discovery or, alternatively, strike the offensive extrinsic material.

### *Conclusion*

Based upon the foregoing, Plaintiff respectfully requests that Your Honor stay the Defendant's attached "Motion to Dismiss" until the Court has had an opportunity to hold a conference and provide notice to the Parties of whether it will convert said motion into a Fed. R. Civ. 56 Motion for Summary Judgment.

Respectfully submitted,

William F. Horn
*Encl:stated*
*via ECF Filing Only*
*cc:*     All Counsel *via ECF Filing Only*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x
**AVROHOM SEBROW,**
**Individually and on behalf of a class,**

                                        **Plaintiff,**        **Civil Action No. 1:10cv2822-FB-RML**

            **v.**                                           **DEFENDANT'S MOTION TO**
                                                             **DISMISS FIRST AMENDED CLASS**
                                                             **ACTION COMPLAINT**
**SPECIALIZED LOAN SERVICING, LLC;**
**and**
**JOHN AND JANE DOES NUMBERS 1**
**THROUGH 25,**

                                        **Defendants.**
-------------------------------------------------------- x

        Defendant Specialized Loan Servicing, LLC ("SLS"), by counsel, pursuant to

Fed. R. Civ. P. 12(b)(6), submits this Motion for Dismiss Plaintiff Avrohom Sebrow's

("Plaintiff") First Amended Class Action Complaint.   For the reasons stated in SLS'

accompanying memorandum in support of this motion, the Court should grant SLS' Motion to

Dismiss First Amended Class Action Complaint.

                                        SPECIALIZED LOAN SERVICING, LLC


                                        By:    /s/ Jason E. Manning


Jason E. Manning
Counsel to Defendant Specialized Loan Servicing, LLC
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone:  (757) 687-7564
Facsimile:  (757) 687-1524
E-mail: jason.manning@troutmansanders.com

Christina Heather Bost Seaton

Counsel to Specialized Loan Servicing, LLC
TROUTMAN SANDERS LLP
405 Lexington Avenue
New York, NY 10174
212-704-6440
Fax: 212-704-5913
Email: christina.bost-seaton@troutmansanders.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x
**AVROHOM SEBROW,**
**Individually and on behalf of a class,**

                                **Plaintiff,**        **Civil Action No. 1:10cv2822-FB-RML**

      **v.**

                                          **CERTIFICATE OF SERVICE**

**SPECIALIZED LOAN SERVICING, LLC,**
**and**
**JOHN AND JANE DOES NUMBERS 1**
**THROUGH 25,**

                                **Defendant.**
-------------------------------------------------------- x

          I hereby certify that on this 25th day of February, 2011, I e-mailed the foregoing

Defendant Specialized Loan Servicing, LLC's Motion to Dismiss First Amended Class Action

Complaint to:

<u>**Counsel for Plaintiff Avrohom Sebrow**</u>
Abraham Kleinham
Kleinman LLC
626 RXR Plaza
Uniondale, New York 11556-0626
Phone: 516-522-2621
Fax: 888-522-1692
E-mail: <u>akleinman@kleinmannllc.com</u>

                                  _____/s/ Jason E. Manning_____
                                   Jason E. Manning
                                   Counsel to Specialized Loan Servicing, LLC
                                   TROUTMAN SANDERS LLP
                                   222 Central Park Avenue, Suite 2000
                                   Virginia Beach, Virginia 23462
                                   Telephone:  (757) 687-7564
                                   Facsimile:  (757) 687-1524
                                   E-mail: <u>jason.manning@troutmansanders.com</u>

Christina Heather Bost Seaton
Counsel to Specialized Loan Servicing, LLC
TROUTMAN SANDERS LLP
405 Lexington Avenue
New York, NY 10174
212-704-6440
Fax: 212-704-5913
Email: christina.bost-seaton@troutmansanders.com

414189v1

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
AVROHOM SEBROW,
Individually and on behalf of a class,

                                  Plaintiff,        Civil Action No. 1:10cv2822-FB-RML

      v.                                DEFENDANT'S MEMORANDUM
                                         IN SUPPORT OF ITS MOTION TO
                                         DISMISS FIRST AMENDED CLASS
                                         ACTION COMPLAINT

SPECIALIZED LOAN SERVICING, LLC;
and
JOHN AND JANE DOES NUMBERS 1
THROUGH 25,

                                    Defendants.
-------------------------------------------------------- x

        Defendant Specialized Loan Servicing, LLC ("SLS" or "Defendant"), by counsel, submits the following Memorandum in Support of its Motion to Dismiss Plaintiff's First Amended Class Action Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## I.    <u>INTRODUCTION</u>

        The allegations relevant to this motion to dismiss are simple:  Plaintiff Avrohom Sebrow ("Plaintiff") was unable to meet his loan obligations and SLS, as servicer of the loan, sent Plaintiff a Notice of Debt, which included the name and address of SLS as the entity to whom Plaintiff's payments are owed (the "June 8 Letter").[1]  Further, in response to Plaintiff's subsequent request for more information, SLS sent another letter to Plaintiff identifying again the name of the entity to whom the payments are owed and its address, as well as the name of the

---

[1] During the conference on October 20, 2010, Plaintiff's counsel admitted that Plaintiff owes the debt, is in default, and is not confused about the debt or to whom payments are due.

original creditor, which no longer does business under that name, and enclosing the loan balance statement (the "June 23 Letter").

Individually and on behalf of a class, Plaintiff alleges two counts against SLS and its controlling persons and entities "John and Jane Does Numbers 1 through 25" for violation of Sections 1692g(a)(2), 1692g(a)(3), 1692e, and 1692g(a)(5) of the Fair Debt Collection Practices Act ("FDCPA"). These allegations arise from the SLS' alleged failure to include certain information in its June 8 and June 23 Letters sent to Plaintiff. In particular, Plaintiff alleges that SLS failed to include "the name of the creditor to whom the debt is owed," as well as the name and address of the original creditor. Further, Plaintiff asserts that SLS' first dunning letter required that Plaintiff dispute the debt validity in writing in violation of Section 1692g(a)(3) and that the second letter contained false or misleading statements.

First, Plaintiff's claim that SLS failed to provide him with the name of the "creditor to whom payment are owed" under Section 1692g(a)(2) is without merit. Plaintiff does not and cannot dispute that his mortgage payments are owed to SLS. Instead, he appears to assert a hyper-technical reading of Section 1692g(a)(2) that because SLS was identified in the dunning letter as "servicer" rather than "creditor," the FDCPA has been violated. Plaintiff's claim is contrary to the express purposes of the FDCPA, and fails to allege sufficient facts to survive dismissal. The express intent of the FDCPA is to eliminate false, misleading, and deceptive representations in connection with collection of a consumer debt. Section 1692g(a)(2) of the FDCPA requires that a debt collector include specified information in the debt validation letter (or "dunning letter") to avoid consumer confusion. The ultimate purposes of the dunning letter are to ensure that the unsophisticated consumer understands the nature and amount of the debt, his right to dispute such amount, and to enable the consumer to resolve his delinquency, if

possible.  SLS, as servicer of Plaintiff's debt, is the party to whom the debt is paid and to whom Plaintiff submits his monthly mortgage check.  SLS is the entity "to whom the debt is owed" because Plaintiff must pay it.  Accordingly, SLS included its name, mailing address, and a description of the character and amount of Plaintiff's debt in its dunning letter.  SLS also identified the "prior servicer" PNC Bank, the entity to whom Plaintiff previously paid his mortgage payments, to ensure that the nature of the debt was clear.

Second, Plaintiff's claim that the June 8 Letter provided that the exclusive method of disputing the debt validity was in writing is contrary to the plain language of the June 8 Letter attached to the Plaintiff's First Amended Complaint.  The letter does not limit Plaintiff's means of disputing the debt to writing only and provides two telephone numbers expressly advising Plaintiff to use them to contact SLS with any questions.  The Second Circuit has not addressed this issue but relevant authority from this Court and others indicates that the facts alleged here fail to state a claim under section 1692g(a)(3).

Third, SLS did not make false, deceptive, or misleading statements in its June 23 Letter in violation of Section 1692e.  Plaintiff did not identify its written request to SLS as made under the FDCPA.  Accordingly, SLS interpreted Plaintiff's communication as a qualified written request under the Real Estate Settlement Procedures Act ("RESPA").  Pursuant to RESPA, SLS stated that it was the servicer of the loan on behalf of the investor and provided its name "Specialized Loan Servicing, LLC" as the party to whom payments are owed (which is consistent with the FDCPA).  There was nothing false or misleading about this statement.

Fourth, Plaintiff's assertion that SLS did not provide Plaintiff with the name of the original creditor is contrary to the June 23 Letter that unambiguously identifies the originator of the loan - National City Bank.  The letter did not list the National City Bank's address because

the National City Bank no longer does business under that name. Instead, the letter identifies SLS and its address because SLS is the party to whom payments are owed.

Plaintiff's First Amended Complaint fails to state a claim under the FDCPA. To hold otherwise would frustrate the explicit aim of the FDCPA to avoid confusing unsophisticated debtors regarding where the debtor should remit his payment and would encourage lawsuits based on hyper-technical interpretations of the FDCPA. The Court should dismiss Plaintiff's First Amended Complaint for failure to state a claim for four independent reasons:

**A.** **Plaintiff Fails to State a Claim for Violation of the FDCPA under 15 U.S.C. § 1692g(a)(2):**

    **1.** **SLS is the Entity "To Whom the Debt is Owed" for Purposes of the FDCPA;**

    **2.** **Plaintiff's Peculiar Interpretation of Section 1692g(a)(2) is Contrary to the Express Purpose of the FDCPA; and**

    **3.** **Plaintiff's Claim Contradicts Established Precedent that the FDCPA Should Not Be Interpreted in a Hyper-Technical Manner to Render an Absurd Result.**

**B.** **Plaintiff Fails to State a Claim for Violation of the FDCPA under 15 U.S.C. § 1692g(a)(3) because the June 8 Letter Does Not State that Writing Is the Exclusive Method of Disputing the Debt Validity and Provides Telephone Numbers for Plaintiff to Use.**

**C.** **Plaintiff Fails to State a Claim for Violation of the FDCPA under 15 U.S.C. § 1692e because Reference to the Loan Investor Does Not Constitute a False, Deceptive, or Misleading Statement.**

**D.** **Plaintiff Fails to State a Claim for Violation of the FDCPA under 15 U.S.C. § 1692g(a)(5) because SLS Provided Plaintiff with the Name of the Original Creditor and Identified the Relevant Address.**

## II.    <u>ALLEGED FACTS</u>

On June 8, 2010, SLS sent Plaintiff a Notice of Debt letter stating that SLS services Plaintiff's mortgage loan and requesting that Plaintiff send the total amount due to SLS

at the address specified in the letter.  (Am. Comp. ¶ 27 & Ex. A thereto).  Attached to the Notice

of Debt letter is a statement of the debt information, including Plaintiff's loan number, property

address, prior servicer, payment due date, reinstatement figures, and an itemized list of loan and

escrow balances and fees.  (Am. Comp. Ex. A).  Plaintiff's mortgage payments are owed to SLS,

and the dunning letter identifies SLS and the debt at issue.  (Id.).  The letter further provides that

Plaintiff can contact SLS either at the address stated in the letter or by calling one of the

telephone numbers also provided therein.  (Id.)  At the bottom of the letter, Plaintiff is notified

that unless he disputes the validity of his debt "at the address above within 30 days after

receiving this notice …, [SLS] will assume the debt is valid."  (Id.)

On June 17, 2010, Plaintiff sent a letter to SLS notifying SLS that he disputed the

validity of his debt and requesting verification of the debt, as well as the name of the creditor to

whom the debt is owed and the name and address of the original creditor.  (Am. Comp. ¶ 44 &

Ex. B thereto).  Nothing in this letter identifies the request as made pursuant to the FDCPA.  (Id.)

Within five days, on June 23, 2010, SLS responded to Plaintiff's request in

writing.  (Am. Comp. ¶ 50 & Ex. C thereto).  SLS interpreted Plaintiff's request as a "qualified

written request" under RESPA and also included all the information required of it under the

FDCPA.  (Id.)  The letter provides the name of the entity to whom the debt is owed – SLS, as

well as the name of the originator of the Plaintiff's loan – National City Bank.  (Id.; see also

Credit Line Mortgage, at p. 1, attached hereto as Exhibit 1[2]).  Further, the letter provides the

relevant address as "c/o Specialized Loan Servicing, LLC," which possesses all the relevant

---

[2] On a motion to dismiss, the court can take judicial notice of the documents integral to the
allegations in the complaint or documents referenced in the complaint.  *Faulkner v. Beer*, 463
F.3d 130, 134 (2d Cir. 2006).  Here, the Plaintiff's loan and the Credit Line Mortgage, which
memorializes the loan terms and the name of the original creditor, are central to the allegations in
the Plaintiff's First Amended Complaint.

information about the Plaintiff's loan.  (*Id.*)  Inclusion of an additional address for the original creditor – National City Bank – would be confusing and misleading because National City Bank is no longer doing business under that name. (*See* PNC Press Release, attached hereto as <u>Exhibit 2</u>).    Finally, enclosed with the letter was a payoff statement verifying the amount of the Plaintiff's debt in compliance with the FDCPA.  (Am. Comp. <u>Ex. C</u>).

### III.   <u>LEGAL STANDARD</u>

In order to survive a motion to dismiss the plaintiff "must allege enough facts 'to raise a right of relief above the speculative level.'"  *Wood v. Capital One Servs., LLC*, No. 5:09-cv-1445, 2010 U.S. Dist. LEXIS 60662, at *3 (N.D.N.Y. June 18, 2010) (granting defendant's motion to dismiss plaintiff's FDCPA claims).  A complaint is plausible only where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Silverman Partners LP v. Verox Group*, No. 08-civ3103, 2010 U.S. Dist. LEXIS 71977, at *8-9 (S.D.N.Y. July 16, 2010) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).  Further, the "plausibility standard is not, however a probability requirement; the pleading *must show*, not merely allege that the pleader is entitled to relief."  *Krapf v. Collectors Training Inst. of Ill., Inc.*, No. 09-cv-3915, 2010 U.S. Dist. LEXIS 13063, at *5 (W.D.N.Y. Feb. 15, 2010) (granting defendant's motion to dismiss, in part, over plaintiff's FDCPA claims) (emphasis added).

In ruling upon a motion to dismiss, "conclusory allegations, labels, and legal conclusions – are identified and stripped away." *Krapf*, No. 09-cv-3915, 2010 U.S. Dist. LEXIS 13063, at *5.  In assessing whether a complaint states a facially plausible claim, the court "may consider any written instrument attached to [the complaint] as an exhibit, materials incorporated in it by reference, and document that, although not incorporated by reference, are 'integral' to the

complaint." *Silverman Partners LP*, No. 08-civ-3103, 2010 U.S. Dist. LEXIS 71977, at *9 (quoting *Sira v. Mortgon*, 380 F.3d 57, 67 (2nd Cir. 2004)).  Further, the court is obligated to "draw on its judicial experience and common sense."  *Wood*, No. 5:09-cv-1445, 2010 U.S. Dist. LEXIS 60662, at *4.  This legal standard and Plaintiff's own allegations demonstrate that the Complaint must be dismissed for failure to state a claim upon which relief may be granted.

## IV.   ARGUMENT

### A.   Plaintiff Fails to State a Claim for Violation of the FDCPA under  15 U.S.C. § 1692g(a)(2).

#### 1.   The Initial Dunning Letter Identified the Entity "to Whom the Debt is Owed" for Purposes of the FDCPA.

Plaintiff fails to state a claim because SLS is the person "to whom the debt is owed" for purposes of section 1692g(a)(2) under the objective "least sophisticated consumer" standard and under established principles of statutory interpretation.

##### a.   Applying the Least Sophisticated Consumer Standard, SLS Complied with Section 1692g(a)(2).

Plaintiff alleges that SLS violated the FDCPA because it did not include the "name of the creditor to whom the debt is owed," as required by Section 1692g(a)(2) of the Act. However, Plaintiff admits that the dunning letter identifies the debt and states that it is payable to SLS.  The dunning letter satisfies section 1692g(a)(2) and the Complaint is contrary to the well-settled standard governing this Court's determination of FDCPA violations.

The Second Circuit applies the "least sophisticated consumer" standard, which is an objective test, to determine whether the text of a dunning letter violates the FDCPA.  *Franzos v. Pinnacle Credit Servs., LLC*, 332 F. Supp. 2d 682, 685 (S.D.N.Y. 2004).  Specifically, the "question is whether the Letter would confuse the least sophisticated consumer as to his or her rights" or the nature of the debt owed.  *Franzos*, 332 F. Supp. 2d at 685; *see Blarek v. Encore*

*Receivable Mgmt., Inc.*, No. 06-c-0420, 2007 U.S. Dist. LEXIS 22549, at *13 (E.D. Wis. Mar. 27, 2007) (finding the "key consideration is that the unsophisticated consumer is to be protected against confusion whatever form it takes").

This Court recognizes that "the objectivity of the least sophisticated consumer standard not only ensures consumer protection **but also protects debt collectors against liability for unusual and peculiar interpretations of collection notices**." *Ehrich v. I.C. Sys.*, 681 F. Supp. 2d 265, 269 (E.D.N.Y. 2010) (emphasis added).  In short, under the FDCPA:

> [C]onfusion is not in the eyes of the beholder…the 'Act is not violated by a dunning letter that is susceptible of an ingenious misreading, for then every dunning letter would violate it.  The Act protected the unsophisticated debtor, but not the irrational one.

*Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1062 (7th Cir. 2000) (holding that "a statement will not be confusing or misleading unless a significant fraction of the population would be similarly mislead") (quoting *White v. Goodman*, 200 F. 3d 1016, 1020 (7th Cir. 2000)); *see also Blarek*, 2007 U.S. Dist. LEXIS 22549, at *13 (stating that a letter will not be considered to be a violation of Section 1692g(a)(2) "unless a significant fraction of the population would be mislead by the letter") (quoting *McMillan v. Collection Professionals, Inc.*, 455 F.3d 410, 414 (7th Cir. 2005)).  Further, the least sophisticated consumer is not presumed to be ignorant, rather the debtor possesses basic knowledge and reasonableness.  *See Olson v. Risk Mgmt. Alternatives, Inc.*, 366 F.3d 509, 512 (7th Cir. 2004) (finding "an unsophisticated consumer possesses rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences"); *Pettit*, 211 F.3d at 1060 (7th Cir. 2000) (recognizing that the unsophisticated debtor "possesses reasonable intelligence").

Under this objective standard, the "creditor to whom the debt is owed" is simply the person to whom the debtor is required to make payments.  This interpretation is consistent

with an unsophisticated consumer's understanding of the mortgage lending industry, as well as the purpose of including the name of the creditor to whom the debt is owed in the dunning letter, which is specifically to permit a debtor to make-up for his delinquency.  Here, Plaintiffs argue for this Court to adopt an unusually technical reading of the FDCPA, and create precedent that will encourage litigation based on peculiar interpretations.  Although this Court has not ruled on similar facts, persuasive precedent exists of courts rejecting similar claims.[3]  *See, e.g.*, *Luzinski v. Arrow Fin. Servs., LLC.*, No. 05-cv-1322, 2007 U.S. Dist. LEXIS 71788, at *3 (E.D. Wis. Sept. 26, 2007) (dismissing plaintiff's claims holding a dunning letter that identifies the servicer to whom the debtor's payments are made does not violate the FDCPA).

The legal technicalities of whether there is a different entity who is the holder of the Note or an entity with equitable title to the property risks confusing debtors whose mortgages are frequently sold on the secondary market and/or pooled and securitized.  For this reason, the FDCPA is concerned with identifying the debt and the person to whom the debt is owed.  In this

---

[3]There are two cases from this Court concluding that the debt collectors violated § 1692(a)(2) for failing to clearly identify the creditor, but they are factually distinguishable and inapposite.  In *Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 2d 293, 301 (E.D.N.Y. 2005), the Court granted plaintiff's summary judgment motion finding that "[t]he least sophisticated consumer would not deduce from reading the Collection Letter that the name of the creditor *seeking* collection is The Bureaus" because the letter described The Bureaus as "an agent of the current owner of your account," rather than the entity collecting the debt.  *Id.* at 301.  In *Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 132-33 (E.D.N.Y. 2006), the Court, noting that there is little precedent on point, denied defendant's motion to dismiss, finding the party to whom the debt was owed unclear because the letter identified Chase as both the "original creditor" and as "having sold or assigned" the debt.  In *Dewees*, the Court noted that there was no analogous case law on point.  This is important because since then, three more factually similar cases have been decided.  *See Luzinski v. Arrow Fin. Servs., LLC.*, No. 05-cv-1322, 2007 U.S. Dist. LEXIS 71788, at *3 (E.D. Wis. Sept. 26, 2007); *Bode v. Encore Receivable Mgmt., Inc.*, No. 05-cv-1013, 2007 U.S. Dist. LEXIS 64477 (E.D. Wis. Aug. 30, 2007); *Blarek*, 2007 U.S. Dist. LEXIS 22549.

case, that person is SLS as stated in the dunning letter. Courts have refused to find FDCPA violations when the hypertechnical compliance with it would tend to consumer a consumer. For example, in *Spangler v. Conrad*, the court held that no FDCPA violation took place when the debt collector failed to provide the exact name of the creditor to whom the debt was owed. No. 2:08-cv-234, 2010 U.S. Dist. LEXIS 57120, at *9 (E.D. Tenn. June 9, 2010). In that case, the debt collection letter "listed the creditors' name as '1st Invst Ser/1st TN Bank' which was false inasmuch as First Tennessee Bank did not have an ownership interest in the debt at the time the dunning letter was sent… [Naming the true creditor, First Tennessee Investment Services, however,] would have been confusing to any consumer, sophisticated or not, since [debtor] had dealt only with First Tennessee Bank. … Including a reference to First Tennessee Bank was **not** violative of § 1692g(a)(2) under these circumstances." *Id.* at *8-9 (emphasis added).

Plaintiff does not allege any confusion nor does he allege any facts to state a claim that identifying the mortgage servicer who is owed payment is confusing under the objective standard.[4] Therefore, the First Amended Complaint should be dismissed.

      b.     <u>Applying Statutory Construction Principles, SLS Complied with Section 1692g(a)(2).</u>

In the first instance, it is a "familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself . . . Absent a clearly

---

[4] Plaintiff's Note was sold and securitized, and the holder of the Note is U.S. Bank National Association, Indenture Trustee, Home Equity Loan Trust 2007-HSA3. Accordingly, disclosure of what entity is technically the owner of the debt is legally complicated and beyond the understanding of the least sophisticated consumer. However, it is clear that as servicer SLS is the person to whom payment is owed and the creditor under common usage and for all practical purposes. There is nothing false, misleading, or confusing about the dunning letter under, which perfectly comports with the express purpose of the FDCPA.

expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Sarder v. Acad. Collection Serv.*, No. 02-cv-2486, 2005 U.S. Dist. LEXIS 11934, at *5 (E.D.N.Y. Mar. 3, 2005) (citing *Heintz v. Jenkins*, 514 U.S. 291, 298 (1982) (employing plain language analysis to interpret FDCPA). Here, the express intent of the legislature is to "eliminate abusive debt collection practices" and "to protect consumers against debt collection abuses." 15 U.S.C.S. § 1692(e). Plaintiff does not and cannot allege that the Notice of Debt—which identifies SLS as the entity Plaintiffs must pay—is inconsistent with the purposes of the FDCPA. To the contrary, naming the entity to whom payments are due, whether it is the mortgage lender or a mortgage servicer, facilitates the aim of the FDCPA and the debtor in rectifying his delinquency.

       Black's Law Dictionary defines a "creditor" as "one to whom a debt is owed." BLACK'S LAW DICTIONARY 375 (7th ed. 1999). Barron's Law Dictionary defines "creditor" as "one who has a right by law to demand and recover of another a sum of money on any account whatever." BARRON'S LAW DICTIONARY 109 (2nd ed. 1984). Webster's Dictionary defines "owe" as "to be under obligation to pay." MERRIAM-WEBSTER ONLINE DICTIONARY (2010), *available at* http://www.merriam-webster.com/dictionary/owe. Here, SLS, as servicer, has the legal right to demand and recover Plaintiff's mortgage loan payments. (Am. Comp. ¶ 21 & Ex. A thereto). Plaintiff is obligated to pay his delinquency to SLS, not to the original lender or some other entity. (Am. Comp. Ex. A). Accordingly, the dunning letter identifies SLS as servicer and the person Plaintiff owes payment. Therefore, Plaintiff fails to state a claim that SLS violated the FDCPA and his Complaint must be dismissed.

2.      **Plaintiff's Peculiar Interpretation of Section 1692g(a)(2) is Contrary to the Express Purpose of the FDCPA**

It is well-recognized that the "general purpose of the FDCPA is to create a prohibition against use of 'false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Franzos v. Pinnacle Credit Servs., LLC*, 332 F. Supp. 2d 682, 685 (S.D.N.Y. 2004) (quoting *Miller v. Wolpoff & Abramson, LLP.*, 321 F.3d 292, 300 (2d Cir. 2003). Further, "the FDCPA creates an 'implied duty to avoid confusing the unsophisticated consumer.'" *Schneider v. TSYS Total Debt Mgmt.*, No. 06-c-345, 2006 U.S. Dist. LEXIS 48177, at *5 (E.D. Wisc. July 13, 2006) (quoting *Barlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997)).

One district court has already relied on the express purpose of the FDCPA as preventing false, misleading, and confusing debt collection practices to support its holding that identifying the servicer in the dunning letter did not violate the FDCPA. *See Bode*, 2007 U.S. Dist. LEXIS 64477, at *21-22 (E.D. Wis. Aug. 30, 2007); *Luzinski*, 2007 U.S. Dist. LEXIS 71788 *3 (citing and incorporating *Bode* by reference). In *Bode*, the dunning letter identified the loan servicer as the creditor rather than the owner of the debt and the court held there was no violation of section 1692g(a)(2). *Bode*, 2007 U.S. Dist. LEXIS 64477, at *21-22. The court relied on the Second Circuit's decision in *Maguire v. Citicorp Retail Services*, Inc., 147 F.3d 232 (2nd Cir. 1998) as authority for its conclusion:

> In addition, the court finds that the holding in *Maguire* is instructive. In addressing the false name exception, 15 U.S.C. § 1692a(6), under which a creditor can be treated as a debt collector, the court in *Maguire* held that a creditor is not required to use its exact, legal name to avoid falling under the exception; rather, a creditor may use "the name under which it usually transacts business, or a commonly-used acronym," or "any name that it has used from the inception of the credit relation."

*Id.* at \*20 (quoting *Maguire*, 147 F.3d at 235). Therefore, this Court has the benefit of factually analogous case law from a court that relied on mandatory authority from the Second Circuit, and *Bode* should be highly persuasive.[5]

Similarly, the district court found no violation in *Luzinski* where the dunning letter included the subject line: "Re: Capital One Services" though creditor Capital One Bank was not identified. *Luzinski*, 2007 U.S. Dist. LEXIS 71788 \* 2-3. The Court reasoned that the mention of the servicer was not literally false because it did not state that Capital One Servicers was the creditor. *Id.* at \*6. The court also stated that mention of Capital One Services was not misleading because the entities are related entities involved with the same account: "one entity owns the debt, the other services the account." *Id.* Further, the court emphasized that plaintiff made payments on the account to the servicer. *Id.*

Here, SLS included its name and contact information in the Notice of Debt mailed to Plaintiff to avoid confusing the Plaintiff regarding to whom he must remit his mortgage loan payments. (Am. Comp. <u>Ex. A</u>). SLS is servicer of Plaintiff's loan and Plaintiff must make his checks payable to SLS and mail the payment directly to SLS. In *Luzinski*, the dunning letter directed payment to the servicer, but failed to identify the servicer as such. The court found no violation of the FDCPA there, yet here SLS does more by clearly identifying itself as the loan servicer and the address for the payments owed to it. *Luzinski*, 2007 U.S. Dist. LEXIS 71788 \*6 ("Arrow's letter did not attempt to explain the relationship between the entities, but the FDCPA did not require it to do so."). Further, SLS provided Plaintiff's loan number, property address,

---

[5] Although the facts do not involve a loan servicer, the Court's decision in *Hernandez v. The Affiliated Group, Inc.* No. 04-cv-4467, 2006 U.S. Dist. LEXIS 2557 (E.D.N.Y. Jan. 12, 2006) is also informative here. In *Hernandez*, the Court held that the debt collector did not violate the FDCPA when the name of the creditor could be inferred from the notice on the back of the dunning letter because such would no confuse even the least sophisticated consumer. *Id.* at \*8.

and debt information in the Notice of Debt.  (Am. Comp. Ex. A).  The contents of the dunning letter are entirely consistent with the explicit purposes of the FDCPA and the goal of the Act to prevent consumer confusion.  No reasonable fact finder could conclude that stating the name of the servicer to whom payment is due deceives, misleads, or confuses the debtor and Plaintiff's claim must be dismissed.

> ### 3.   Plaintiff's Claim Contradicts Established Precedent that the FDCPA Should Not be Interpreted in a Hyper-Technical Manner to Render an Absurd Result.

It is well-settled that the FDCPA, including Section 1692g, should not be interpreted in a hyper-technical manner, but rather should be construed consistently with the express aim of the Act.  *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 237 (2d Cir. 1998) (holding that the "FDCPA does not extent to every bizarre or idiosyncratic interpretation of a notice by even the least sophisticated debtor"); *Olson*, 366 F.3d at 513 (finding that the unsophisticated consumer is "able to make basic logical deductions and inferences" and should not "interpret collection letters in a bizarre or idiosyncratic fashion").  In fact, Plaintiff's hyper-technical interpretation of section 1696g(a)(2) has already been rejected.  *See Luzinski*, 2007 U.S. Dist. LEXIS 71788, at \*5 (rejecting plaintiff's "hyper-technical" claim reasoning that "[t]here may be multiple names for a creditor which an unsophisticated consumer could still perceive as being the correct name of the creditor.").

Here, Plaintiff seeks to impose a hyper-technical meaning on the statutory language "the creditor to whom the debt is owed" in direct contravention to law that explicitly rejects such approach.  Plaintiff's interpretation of Section 1692g(a)(2), if accepted, would lead to an absurd result that is contrary  to the aim of the FDCPA; specifically, that the entity to whom the debtor is required to make payments would not have to be identified in a dunning

letter.  Plaintiff's interpretation defies logic and would confuse and mislead the unsophisticated consumer as to whom the debtor must make payments.  Without knowledge of the servicer to whom payments must be sent, Plaintiff could not remedy the delinquency that was the purpose of sending the Notice of Debt letter in the first place.  Thus, Plaintiff's hyper-technical interpretation must be rejected and Plaintiff's Complaint should be dismissed.

**B.      Plaintiff Fails to State a Claim for Violation of the FDCPA under 15 U.S.C. § 1692g(a)(3) because the June 8 Letter Does Not State that Writing Is the Exclusive Method of  Disputing the Debt Validity and Provides Telephone Numbers for Plaintiff to Use.**

In support of its claim for violation of section 1692g(a)(3) of the FDCPA, Plaintiff alleges that SLS required that any dispute concerning the debt validity must be in writing. (Am. Comp. ¶ 93(b)).  Plaintiff's claim fails as a matter of law because the letter does not provide that writing was the exclusive method of disputing the debt validity.   The June 8 Letter plainly provides two toll-free telephone numbers advising Plaintiff to contact SLS by phone.  (Am. Comp. Ex. A).  Therefore, the First Amended Complaint fails to state a claim based on the plain language of the letter incorporated into the Amended Complaint.

Further, even if the letter could be read as imposing an "in writing" requirement, federal courts in various circuits have found that does not violate Section 1692g(a)(3).

Under the FDCPA, the initial communication from a debt collector must include a statement that "unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector."  15 U.S.C. § 1692g(a)(3).  Although subsection (a)(3) does not require that the borrower dispute the debt validity in writing, subsections (a)(4), (a)(5) and (b) expressly impose

such "in writing" requirement. *Id.* at §§ 1692(a)(4), (a)(5) and (b).[6]  Courts have struggled to

determine whether the Congress omitted the "in writing" language in subsection (a)(3)

inadvertently or intentionally, which has prompted a split among circuits. *Jerman v. Carlisle,*

*McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1610, n. 3 (2010) (acknowledging the

split in circuits but expressing "no view about whether inclusion of an "in writing" requirement

in a notice to a consumer violates Section 1692g, as that question was not presented in the

petition for certiorari").

In *Graziano v. Harrison*, the United States Court of Appeals for the Third Circuit

has held that subsection (a)(3) contemplates that any debt validity dispute must be in writing.

950 F.2d 107, 112 (3d Cir. 1991).  The court dismissed plaintiff's argument that subsection

(a)(3) allows consumer to dispute the debt orally, while subsections (a)(4) and (b) require the

same to be done in writing in order to invoke the statutory protections of subsection (b) that the

debt collector verify the debt and cease all collection activities until it verifies the debt:

> Adopting [plaintiff's] reading of the statute would thus create a
> situation in which, upon the debtor's non-written dispute, the debt
> collector would be without any statutory ground for assuming that
> the debt was valid, but nevertheless would not be required to verify
> the debt or to advise the debtor of the identity of the original
> creditor and would be permitted to continue debt collection efforts.
> We see no reason to attribute to Congress an intent to create so
> incoherent a system.

*Id.* at 112; *accord Wallace v. Capital One Bank*, 168 F. Supp. 2d 526, 529 (D. Md. 2001)

(adopting *Graziano* approach and granting defendant debt collector's motion to dismiss.  "[N]ot

---

[6] "[I]f the consumer notifies the debt collector **in writing** within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt … ." *Id.* at § 1692g(a)(4) (emphasis added).  "If the consumer notifies the debt collector **in writing** within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, … the debt collector shall cease collection of the debt … . *Id.* at § 1692g(b) (emphasis added).

requiring a debtor's dispute under § 1692g(a)(3) to be in writing would make the statutory scheme incoherent"); *see also Ingram v. Corporate Receivables, Inc.*, No. 02-c-6608, 2003 U.S. Dist. LEXIS 7475, at *17 (N.D. Ill. May 2, 2003) (adopting *Graziano* and dismissing plaintiff's claim for violation of Section 1692(a)(3); holding that the "in writing" language does not violate the FDCPA).

      The Second Circuit has not had an opportunity to decide the issue. Nonetheless, some courts in the Second Circuit, including the Eastern District of New York, have held that the dunning letter which contains the writing requirement violates Section 1692g(a)(3) of the FDCPA. *See, e.g., Vega v. Credit Bureau Enters.*, No. 02-cv-1550, 2005 U.S. Dist. LEXIS 4927, at *31 (E.D.N.Y. Mar. 29, 2005) (holding that "the defendant's explicit instruction to the consumer that she must dispute the validity of the debt in writing clearly overshadows the validation notice and violates § 1692g(a)(3) of the FDCPA when the letter is read as a whole"); *Ong v. American Collections Enter., Inc.*, No. 98-cv-5117, 1999 U.S. Dist. LEXIS 409, at *8 (E.D.N.Y. Jan. 15, 1999) (holding that the dunning letter violates Section 1692g(a)(3) by requiring that plaintiff dispute the debt in writing).

      *Vega* and *Ong* are distinguishable from the present case, however, because there the debt collection notices restricted the customer's means of disputing the debt validity to writing only, and did not provide an alternative means of communications with the debt collector. *Vega*, 2005 U.S. Dist. LEXIS 4927, at *2-3 (no mention of the telephone numbers or other means of communications in the dunning letter); *accord Ong*, 1999 U.S. Dist. LEXIS 409, at *2. By contrast, SLS' communication to Plaintiff also provided telephone numbers, which Plaintiff could call to dispute his debt. (Am. Comp. Ex. A). The contested language does not even contain the word "writing." It merely provides that unless Plaintiff disputes the amount of

- 17 -

debt "at the address above," SLS will assume that the debt is valid.  (*Id.*)  The "address above" includes not only the street address but also toll-free telephone numbers and invites Plaintiff to call with **any** questions.  (*Id.*)  Therefore, as a matter of law, SLS' debt collection letter did not provide that the exclusive method of disputing the debt validity was in writing, and Plaintiff's claim under Section 1692g(a)(3) fails as matter of law.

Alternatively and in the absence of a controlling precedent from the Second Circuit, the Court should adopt the Seventh Circuit approach set forth in *Graziano* holding that subsection (a)(3) requires that the debt be disputed in writing. 950 F.2d at 112.  Any other statutory construction will cause an incoherent result whereby if the consumer disputes the debt orally, the debt collector is not required to verify it or stop its collection activities under subsections (a)(4) and (b), which contain an express writing requirement, but neither will the debt collector be permitted to assume that the debt is valid, thus leaving the debt collector at an impasse.  Such result could not have been intended by the Congress.  Therefore, SLS' dunning letter does not violate Section 1692g(a)(3) of the FDCPA, and Plaintiff's claim under Section 1692g(a)(3) must be dismissed.

**C.    Plaintiff Fails to State a Claim for Violation of the FDCPA under 15 U.S.C. § 1692e  because Reference to the Loan Investor Did Not  Constitute  a  False, Deceptive, or  Misleading Statement.**

Plaintiff next alleges that SLS made "false, deceptive, or misleading statements" in violation of Section 1692e when in its June 23 Letter SLS referred to the investor of the loan. (Am. Comp. ¶ 95(a)).  Such reference is neither false nor misleading under either the FDCPA or RESPA and, therefore, Plaintiff's claim fails as a matter of law.

In his June 17 written communication, Plaintiff did not identify his request as made pursuant to the FDCPA.  Indeed, Plaintiff's letter could be interpreted as a "qualified

written request" under RESPA, and this is how SLS understood it.  Under RESPA, qualified written request is  a "written correspondence … that … includes, or otherwise enables the servicer to identify, the name and account of the borrower; and … provides sufficient detail to the servicer regarding … information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).  Not later than 60 days after the receipt of the qualified written request from the borrower, the servicer must provide the borrower with the information sought or explain why it is not available.  *Id.* at § 2605(e)(2)(B).  The scope of a permissible qualified written request under RESPA is limited to the "information relating to the servicing of … loan." *Id.* at § 2605(e)(1)(A).

Here, SLS complied with RESPA and explained to the borrower that it is the servicer of the loan on behalf of the investor and is the party to whom the payments are owed.  (Am. Comp. <u>Ex. C</u>).  Plaintiff admits that SLS is the servicer of his loan.  (Am. Comp. ¶¶ 19, 21).  Therefore, Plaintiff's attempt to mischaracterize the language in the June 23 letter as false or misleading fails even under the least sophisticated consumer standard, which does not permit "bizarre or idiosyncratic interpretations of collection notices." *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 90 (2d Cir. 2008) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)).  Therefore, Plaintiff's claim under Section 1692g(e) fails as a matter of law.

**D.**      **Plaintiff Fails to State a Claim for Violation of the FDCPA under 15 U.S.C. § 1692g(a)(5) because SLS Provided Plaintiff with the Name of the Original Creditor and Identified the Relevant Address.**

Lastly, Plaintiff alleges that SLS violated Section 1692g(a)(5) by "failing to provide the name of the original creditor" and "the address of the original creditor" in its June 23, 2010 Letter to Plaintiff.  (Am. Comp. ¶ 95(b)&(c)).  Plaintiff's claim fails because the letter includes the name of the original creditor, National City Bank.  Further, the letter identifies the relevant address – SLS' address, which Plaintiff could contact about his loan.  Since National

City Bank recently merged out of existence, supplying Plaintiff with its address would be confusing and misleading.

Pursuant to Section 1692g(a)(5) and (b), an initial communication from the debt collector must contain a statement that "upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor." *Id.* Here, SLS' June 8, 2010 Letter to Plaintiff provided this notice verbatim. (Am. Comp. Ex. A). Therefore, SLS did not violate Section 1692g(a)(5) contrary to the Plaintiff's assertion.

Further, under Section 1692g(b) of the FDCPA, "If the consumer notifies the debt collector in writing within the thirty-day period … that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt … until the debt collector obtains … the name and address of the original creditor … . *Id.* Here, Plaintiff complains that, in response to his June 17, 2010 letter, SLS failed to identify the name of the original creditor. This is patently untrue. SLS' response explicitly states, "This loan was originated by National City Bank." (Am. Comp. Ex. C). FDCPA does not require that the debt collector use the words "original creditor"; it only prescribes that the consumer be notified of the name and address of the original creditor. 15 U.S.C. § 1692g(b). "[E]ven the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Greco v. Trauner, Cohen & Thomas, L.L.P.,* 412 F.3d 360, 363 (2d Cir. 2005) (quoting *Clomon v. Jackson,* 988 F.2d 1314, 1319 (2d Cir. 1993). Therefore, to hear Plaintiff complain that he was not provided with the name of the original creditor when the letter explicitly identified National City Bank as the originator of the loan is contrary to the Second Circuit's standard for determining violations under the FDCPA.

- 20 -

Plaintiff next argues that SLS did not provide him with the address of the original creditor.  The National City Bank is no longer doing business under its name because it was acquired by PNC Bank on December 31, 2008.  (Ex. 2).  Therefore, inclusion of an address of the National City Bank would in itself be an FDCPA violation inasmuch as it would tend to mislead and confuse Plaintiff.[7]  In addition, Plaintiff is, or should be, in possession of the loan documents, including a copy of the Credit Line Mortgage, which identifies the address of National City Bank on the first page.  (Ex. 1).  SLS' failure to provide this address, which is already known to Plaintiff and which relates to an entity no longer operating under its name, does not constitute an FDCPA violation, and Plaintiff's claim under Section 1692g(a)(5) should be dismissed with prejudice.

## V.   <u>CONCLUSION</u>

For all the reasons discussed above, Defendant Specialized Loan Servicing, LLC respectfully requests that the Court grant its Motion to Dismiss and enter an Order dismissing Plaintiff's First Amended Complaint with prejudice and granting Defendant any other legal or equitable relief that the Court deems appropriate.

---

[7] Courts have refused to find FDCPA violations when hyper-technical compliance with the FDCPA would tend to confuse a consumer. *See, e.g, Spangler*, 2010 U.S. Dist. LEXIS 57120, at *8-9 (refusing to find an FDCPA violation when the debt collector failed to list the exact name of the current creditor because the debtor never received any communications from the current creditor and would have been confused if he saw the name in the dunning letter); *accord Shimek v. Weissman, Nowack, Curry & Wilco, P.C.*, 323 F. Supp. 2d 1344, 1348-1349 (N.D. Ga. 2003) (holding that a debt collector did not have to offer to provide "the name and address of the original creditor, if different from current creditor" when the same person was both the original and current creditor; finding that "an offer to provide information about a non-existent original creditor would in itself be a violation of the FDCPA because it would mislead consumers").

SPECIALIZED LOAN SERVICING, LLC


By:    /s/ Jason E. Manning


Jason E. Manning
Counsel to Defendant Specialized Loan Servicing, LLC
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone:  (757) 687-7564
Facsimile:  (757) 687-1524
E-mail: jason.manning@troutmansanders.com

Christina Heather Bost Seaton
Counsel to Specialized Loan Servicing, LLC
TROUTMAN SANDERS LLP
405 Lexington Avenue
New York, NY 10174
212-704-6440
Fax: 212-704-5913
Email: christina.bost-seaton@troutmansanders.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
AVROHOM SEBROW,
Individually and on behalf of a class,

                             **Plaintiff,**       **Civil Action No. 1:10cv2822-FB-RML**

      **v.**

                                        **CERTIFICATE OF SERVICE**

SPECIALIZED LOAN SERVICING, LLC,
and
JOHN AND JANE DOES NUMBERS 1
THROUGH 25,

                            **Defendant.**
-------------------------------------------------------- x

        I hereby certify that on this 25th day of February, 2011, I e-mailed the foregoing

Defendant Specialized Loan Servicing, LLC's Memorandum in Support of Its Motion to Dismiss

Plaintiff's First Amended Class Action Complaint to:

**Counsel for Plaintiff Avrohom Sebrow**
Abraham Kleinman
Kleinman LLC
626 RXR Plaza
Uniondale, New York 11556-0626
Phone: 516-522-2621
Fax: 888-522-1692
E-mail: akleinman@kleinmannllc.com

                                 /s/ Jason E. Manning
                           Jason E. Manning
                           Counsel to Specialized Loan Servicing, LLC
                           TROUTMAN SANDERS LLP
                           222 Central Park Avenue, Suite 2000
                           Virginia Beach, Virginia 23462
                           Telephone:  (757) 687-7564
                           Facsimile:  (757) 687-1524
                           E-mail: jason.manning@troutmansanders.com

Christina Heather Bost Seaton
Counsel to Specialized Loan Servicing, LLC
TROUTMAN SANDERS LLP
405 Lexington Avenue
New York, NY 10174
212-704-6440
Fax: 212-704-5913
Email: christina.bost-seaton@troutmansanders.com

403672v3

When recorded return to:
NCB, CLS BRECKSVILLE
LOCS, LOCATOR 7120
P.O. BOX 5570
CLEVELAND, OH 44101

*4 Family Dwelling*

———— State of New York ————　　　　———— Space Above This Line For Recording Data ————

## CREDIT LINE MORTGAGE
### (With Future Advance Clause)

This is a Credit Line Mortgage as defined in New York Real Property Law section 281. The mortgage contemplates that Lender and Mortgagor will enter into a series of advances or advances, payments and readvances. The aggregate amount at any time outstanding will be limited as specified in this Security Instrument.

1.  **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is ........ **September 11, 2006** ........ .
    The parties and their addresses are:
    MORTGAGOR:　　**AVROHOM SEBROW**

    **242 BEACH 13TH ST FAR ROCKAWAY, New York 11691**

    ☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.
    LENDER:　　**NATIONAL CITY BANK**
    *P.O. Box 5570*
    *Cleveland, OH 44101*

2.  **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, sells, conveys and mortgages to Lender, with power of sale, the following described property:

    **SEE ATTACHED EXHIBIT**

    SEBROW
    MORTGAGEDEED

    4468618321039530  xsler36

    The property is located in　　Queens　　........................................ at ...........................
    　　　　　　　　　　　　　　　　　　　　　(County)
    **242 BEACH 13TH ST** ........................... **FAR ROCKAWAY** .............. , New York　　**11691**
    　　　　(Address)　　　　　　　　　　　　　　　　(City)　　　　　　　　　　(Zip Code)
    Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, wells, ditches, reservoirs, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3.  **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ .................. **200,000.00** ............. . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4.  **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
    A.  Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(You must specifically identify the debt(s) secured and you should include the final maturity date of such debt(s).)*

        **Maturity Date: 9/11/2036**

    Pursuant to the terms of one or more of the note(s), contract(s), or guaranty(ies), the parties reasonably contemplate entering into a series of advances, payments, advances, and readvances.

NEW YORK - CREDIT LINE MORTGAGE (NOT FOR FNMA, FHLMC, FHA OR VA USE)　　*AS*　　　　(page 1 of 4)
Experts © 1995, 1997 Bankers Systems, Inc., St. Cloud, MN Form OCP-REMTG-NY 5/13/2005
VMP -C465(NY) (0505)　　　　VMP Mortgage Solutions, Inc.

Exhibit 1

B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Security Instrument, whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument if those advances are made within 20 years from the date of the recording of this Security Instrument. Advances made more than 20 years after this Security Instrument was recorded are also secured, but may not be secured to the same extent as advances made within 20 years of recording. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All other obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Mortgagor's principal dwelling that is created by this Security Instrument.

5. **MORTGAGE COVENANTS.** Mortgagor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Mortgagor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and may reduce the credit limit. By not exercising either remedy on Mortgagor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**Payments.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees to make all payments when due and to perform or comply with all covenants. Mortgagor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval.

**Claims Against Title.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**Property Condition, Alterations and Inspection.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**Authority to Perform.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

**Leaseholds; Condominiums; Planned Unit Developments.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**Condemnation.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**Insurance.** Mortgagor shall keep the Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition

**Financial Reports and Additional Documents.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

6. **DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

7. **WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, and mortgage, with power of sale, the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

8. **DEFAULT.** Mortgagor will be in default if any of the following occur:

   **Fraud.** Any Consumer Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.

   **Payments.** Any Consumer Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.

   **Property.** Any action or inaction by the Borrower or Mortgagor occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Mortgagor fails to maintain required insurance on the Property; (b) Mortgagor transfers the Property; (c) Mortgagor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Mortgagor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Mortgagor dies; (f) if more than one Mortgagor, any Mortgagor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgment is filed against Mortgagor and subjects Mortgagor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.

   **Executive Officers.** Any Borrower is an executive officer of Lender or an affiliate and such Borrower becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

9. **REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default. In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions.

   At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or any time thereafter. If there is a default, Lender may, in addition to any other permitted remedy, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder.

   The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

10. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Mortgagor breaches any covenant in this Security Instrument, Mortgagor agrees to pay all expenses Lender incurs in performing such covenants or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and the Lender's security interest. These expenses are payable on demand and will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, reasonable attorneys' fees not in excess of 15% of the unpaid debt if the loan is referred for collection to an attorney who is not a salaried employee of the Lender, court costs, and other legal expenses. To the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

11. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

   Mortgagor represents, warrants and agrees that:
   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.
   B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.
   C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.
   D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

12. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

13. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim

against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

14. **SEVERABILITY; INTERPRETATION.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

15. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

16. **AGREEMENTS ABOUT NEW YORK LIEN LAW.** If any part of the secured debt is intended or represented to be used for improvements to the Property, Mortgagor will receive all amounts lent to Mortgagor by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law.

17. **MORTGAGE TAX.**
   ☐ The Property covered by this Mortgage is or will be improved by a one or two family residence or dwelling.
   ☐ The Property covered by this Mortgage ☐ is ☐ is not real property improved by one or more structures containing in the aggregate not more than six residential dwelling units, each with separate cooking facilities.

18. **LINE OF CREDIT.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

19. **APPLICABLE LAW.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent otherwise required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.

20. **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument.
   [Check all applicable boxes]
   ☐ Assignment of Leases and Rents    ☐ Other ...................................................

21. ☐ **ADDITIONAL TERMS.**


Prepared by:
VALORIE PFISTER, National City Bank
6750 Miller Road, Brecksville, OH 44141
**DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

(Signature) _____    (Date) _____    (Signature) _____    (Date) _____
AVROHOM SEBROW

(Signature) _____    (Date) _____    (Signature) _____    (Date) _____

**ACKNOWLEDGMENT.**
STATE OF _New York_ , COUNTY OF _NASSau_ } ss.
(Individual)    On this _____ day of _____ in the year _____ before me,
the undersigned, personally appeared _Avrohm Sebrow_

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

My commission expires: _____

_____
Notary Public - State of New York

ExpertEn© ©1995, 1997 Bankers Systems, Inc., St. Cloud, MN Form OCP-REMTG-NY 5/13/2005    (page 4 of 4)
-C46S(NY) (0506)

PAUL M. MERNICK
Notary Public, State of New York
No. 41490965B
Qualified in Queens County
Commission Expires July 27, 20__

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.



2006092501147001001E5C45

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 6 |
|---|---|---|
| **Document ID: 2006092501147001** | Document Date: 09-11-2006 | Preparation Date: 09-25-2006 |
| Document Type: MORTGAGE | | |
| Document Page Count: 5 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| MADISON TITLE AGENCY, LLC | NCB,CLS BRECKSVILLE |
| AS AGENT FOR | LOCS, LOCATOR 7120 |
| 1125 OCEAN AVENUE | P.O. BOX 5570 |
| LAKEWOOD, NJ 08701 | CLEVELAND, OH 44101 |
| 212-808-9400 | mtany-032881 |
| PICKUP@MADISONTITLE.COM | |

**PROPERTY DATA**

| Borough | Block Lot | Unit | Address |
|---|---|---|---|
| QUEENS | 15619 37 | Entire Lot | 242 BEACH 13 STREET |
| | Property Type: DWELLING ONLY - 4 FAMILY | | |

**CROSS REFERENCE DATA**

CRFN_____ or Document ID_____ or _____ Year_____ Reel ____ Page _____ or File Number_____

**PARTIES**

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| AVROHOM SEBROW | NATIONAL CITY BANK |
| 242 BEACH 13TH STREET | P.O. BOX 5570 |
| FAR ROCKAWAY, NY 11691 | CLEVELAND, OH 44101 |

**FEES AND TAXES**

| Mortgage | | | Recording Fee: $ | 62.00 |
|---|---|---|---|---|
| Mortgage Amount | $ | 200,000.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount | $ | 200,000.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 1,000.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 2,000.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 500.00 | **RECORDED OR FILED IN THE OFFICE** | |
| MTA: | $ | 600.00 | **OF THE CITY REGISTER OF THE** | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| Additional MRT: | $ | 0.00 | Recorded/Filed      10-05-2006 11:25 | |
| TOTAL: | $ | 4,100.00 | City Register File No.(CRFN): | |
| | | | **2006000559546** | |

*City Register Official Signature*

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. |  <br> 2006092501147001001E5C45 |

## RECORDING AND ENDORSEMENT COVER PAGE     PAGE 1 OF 6

| Document ID: 2006092501147001 | Document Date: 09-11-2006 | Preparation Date: 09-25-2006 |
|---|---|---|
| Document Type: MORTGAGE | | |
| Document Page Count: 5 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| MADISON TITLE AGENCY, LLC <br> AS AGENT FOR <br> 1125 OCEAN AVENUE <br> LAKEWOOD, NJ 08701 <br> 212-808-9400 <br> PICKUP@MADISONTITLE.COM | NCB,CLS BRECKSVILLE <br> LOCS, LOCATOR 7120 <br> P.O. BOX 5570 <br> CLEVELAND, OH 44101 <br> mtany-032881 |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| QUEENS | 15619 | 37 | Entire Lot | | 242 BEACH 13 STREET |

Property Type: DWELLING ONLY - 4 FAMILY

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year____ Reel ___ Page ___ or File Number_____

### PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| AVROHOM SEBROW <br> 242 BEACH 13TH STREET <br> FAR ROCKAWAY, NY 11691 | NATIONAL CITY BANK <br> P.O. BOX 5570 <br> CLEVELAND, OH 44101 |

### FEES AND TAXES

| Mortgage | | | | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 200,000.00 | Recording Fee: $ | 62.00 |
| Taxable Mortgage Amount: | $ | 200,000.00 | Affidavit Fee: $ | 0.00 |
| Exemption: | | | NYC Real Property Transfer Tax Filing Fee: | |
| TAXES: County (Basic): | $ | 1,000.00 | $ | 0.00 |
| City (Additional) | $ | 2,000.00 | NYS Real Estate Transfer Tax: | |
| Spec (Additional) | $ | 0.00 | $ | 0.00 |
| TASF: | $ | 500.00 | | |
| MTA: | $ | 600.00 | | |
| NYCTA | $ | 0.00 | | |
| Additional MRT | $ | 0.00 | | |
| TOTAL | $ | 4,100.00 | | |



**..adison Title Agency, LLC**

Title No.: MTANY-032881

**SCHEDULE A CONTINUED**

**LEGAL DESCRIPTION**

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough and County of Queens, City and State of New York, known and designated on a certain map entitled, "property of Banister Realty Company and others, Far Rockaway, Queens County, New York, September 1910, surveyed for and guaranteed to title guarantee and trust company by F.W. Conklin, City Surveyor and filed in the Office of the Clerk of the County of Queens on 09/02/20 as and by Lots 93 and 94, said lots taken together are bounded and described as follows:

BEGINNING at a point on the easterly side of Beach 13th Street, distant 130.41 feet northerly from the corner formed by the intersection of the northerly side of Sea Girt Place and the easterly side of Beach 13th Street;

RUNNING THENCE easterly at right angles to the easterly side of Beach 13th Street 100 feet;

THENCE northerly parallel with the easterly side of Beach 13th Street 40 feet;

THENCE westerly on a line drawn at right angles to the easterly side of Beach 13th Street 100 feet to said easterly side of Beach 13th Street;

THENCE southerly along the easterly side of Beach 13th Street 40 feet to the point or place of BEGINNING.

NOTE:  Being District , Section , Block(s) 15619, Lot(s) 37, Tax Map of the City of Far Rockaway, County of Queens.

NOTE: Lot and Block shown for informational purposes only.

MORTGAGEDEED_A

4489618321039530

Issued by:
**Madison Title Agency, LLC**
1125 Ocean Avenue, Lakewood, NJ 08701
Telephone: 212-808-9400  Fax: 212-808-9420

(032881.PFD/032881/31)

 **PNC**                                        NEWS RELEASE

**CONTACTS:**

**MEDIA:**                                    **INVESTORS:**
Brian Goerke                                  William H. Callihan
(412) 762-4550                                (412) 762-8257
corporate.communications@pnc.com              investor.relations@pnc.com

### PNC COMPLETES ACQUISITION OF NATIONAL CITY
*PNC to report fourth quarter and full year 2008 earnings on Feb. 3*

PITTSBURGH, Dec. 31, 2008 – The PNC Financial Services Group, Inc. (NYSE: PNC) announced today that it completed its acquisition of National City Corporation (NYSE: NCC).

National City stockholders will receive 0.0392 of a share of PNC common stock for each share of National City common stock based on the terms of the merger agreement, with any fractional share of PNC common stock paid in cash. Shares of National City will no longer be listed on the New York Stock Exchange.

National City branches will continue normal operations, and customers should continue to use National City's services as usual. PNC will provide comprehensive customer information prior to the conversion of National City branches, which will begin in the second half of 2009.

PNC also concluded its sale of $7.6 billion of preferred stock and warrants to the U.S. Treasury under the TARP Capital Purchase Program.

Additionally, PNC announced that it expects to issue financial results for the fourth quarter and full year 2008 on Tuesday, Feb. 3, 2009. PNC Chairman and Chief Executive Officer James E. Rohr and Chief Financial Officer Richard J. Johnson will hold a conference call for investors the same day at 9 a.m. (EST).

Live webcast and telephone conference options will be available.

| | |
|---|---|
| *Dial-in Numbers:* | (800) 990-2718 or (706) 643-0187 (international) |
| *Internet:* | Live audio-only webcast accessible at www.pnc.com/investorevents |
| *Replay Information:* | Available on PNC's Web site for 30 days, and via telephone for one week at (800) 642-1687 or (706) 645-9291, Conference ID 79677068. |
| *Presentation Materials:* | Presentation slides, earnings release and supplementary financial information will be available on PNC's Web site www.pnc.com/investorevents prior to the beginning of the conference call. |

- more -

Exhibit 2

PNC Completes Acquisition of National City – Page 2

The PNC Financial Services Group, Inc. (www.pnc.com) is one of the nation's largest diversified financial services organizations providing retail and business banking; specialized services for corporations and government entities, including corporate banking, real estate finance and asset-based lending; wealth management; asset management and global fund services.

### ###